IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NADA ABOUAKIL,<br><br>　　　　　*Plaintiff,*<br><br>　v.<br><br>BLAZE AUTO, LLC, d/b/a AUTO OUTLET OF PA; STEPHEN SILVERIO,<br><br>　　　　　*Defendants.* | CIVIL ACTION<br>NO. 23-4480 |

**Pappert, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　May 17, 2024

## MEMORANDUM

　　　　Nada Abouakil sued Blaze Auto, LLC and its owner, Stephen Silverio, alleging violations of the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, and the Wage Payment and Collection Law. The parties reached a settlement of Abouakil's claims and now move for the Court's approval. Because the proposed confidentiality agreement and release language frustrate the FLSA's purpose, the Court denies the Motion without prejudice.

I

　　　　Abouakil alleges she worked at Blaze Auto more than forty hours per week from February through September 2023, but only received one month's pay. (Compl. ¶¶ 22; 27, ECF No. 1). She also claims that she complained to Silverio about his failure to pay her, and he fired her in retaliation. (*Id.* at ¶¶ 33–34).

　　　　Blaze Auto and Silverio filed an answer denying these allegations and claiming that Abouakil was not entitled to any minimum wage or overtime compensation because she was a partner at Blaze Auto and therefore—pursuant to the FLSA and its

1

related regulations—was exempt from the wage and overtime requirements. *See* (Answer ¶¶ 3–8, ECF No. 8). The parties entered settlement negotiations, participated in an April 2, 2024 settlement conference with Magistrate Judge Hey, and ultimately reached an agreement. (Mem. in Supp. of Joint Mot. for Approval of Settlement, p. 2, ECF No. 19–1). Under the deal, Blaze Auto will pay $80,000—$47,183.01 to Abouakil and $32,816.99 in attorneys' fees. (Proposed Settlement Agreement, p. 2, ECF No. 19–2); (Mem. in Supp. of Joint Mot. for Approval of Settlement, p. 6).[1]

## II

Congress enacted the FLSA to correct and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers . . . " 29 U.S.C. § 202. It concluded that such conditions create unfair competition, lead to labor disputes, burden commerce and the free flow of goods and interfere with orderly and fair marketing of goods. *Id*. The statute guards against "unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 706 (1945).

Parties may settle FLSA claims by reaching a compromise supervised by either the Department of Labor or by a district court. *See* 29 U.S.C. § 216(b), (c); *Kraus v. PA*

---

[1] The parties are unclear and inconsistent when describing the composition of the settlement fund. In their memorandum supporting settlement approval, they state the settlement is comprised of $13,440 for alleged lost wages, $13,440 for liquidated damages under the FLSA, and $53,120 for a general release of all other claims, including the vaguely labeled "wage-related" and "employment-related" claims outside of this FLSA action. (Mem. in Supp. of Joint Mot. for Approval of Settlement, p. 5– 6). In calculating the alleged lost wages, the parties assigned Abouakil the minimum hourly wage of $7.25 notwithstanding Blaze Auto's position she was a "partner" or "operations manager" in the enterprise. (*Id*. at p. 3)

Meanwhile, the proposed settlement agreement states that Abouakil will receive $23,591.51 for alleged lost wages and $23,591.50 for liquidated damages, with $32,816.99 going to the lawyers. (Proposed Settlement Agreement, p. 2).

*Fit II, LLC*, 155 F. Supp. 3d 516, 522 (E.D. Pa. 2016). Although the Third Circuit has not addressed whether parties may settle FLSA claims without court approval, most district courts in this Circuit deem it necessary. *See Howard v. Phila. Housing Auth.*, 197 F. Supp. 3d 773, 776 (E.D. Pa. 2016); *but see Alcantara v. Duran Landscaping, Inc.*, No. 21-cv-3947, 2022 U.S. Dist. LEXIS 122552, 2022 WL 2703610, at *4 (E.D. Pa. July 12, 2022).

A district court will approve an FLSA settlement if it is a reasonable compromise of contested issues and not merely a waiver of statutory rights caused by the employer's overreaching. *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 652 (E.D. Pa. 2020) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354)). The agreement must (1) settle a bona fide dispute, (2) be fair and reasonable to the employees and (3) further the FLSA's enforcement in the workplace. *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016).

### III

### A

A settlement resolves a bona fide dispute when there are factual issues between the parties such as FLSA coverage and amount of back wages. *Solkoff*, 435 F. Supp. 3d at 653 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1354 (11th Cir. 1982)). The dispute must fall within the FLSA's contours, and there must be evidence the defendant rejects the claims. *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016).

Pursuant to federal regulation, "any employee who owns at least a bona fide 20-percent equity interest in the enterprise in which [she] is employed . . . and who is

actively engaged in its management" is considered a "bona fide executive" exempt from the FLSA's minimum wage and overtime requirements. 29 CFR § 541.101.

Abouakil claims that she was employed "effectively as an operations manager" and "handled virtually every aspect of" Blaze Auto. (Compl. ¶¶ 21-22). However, the parties dispute whether they ever reached an oral agreement making Abouakil a partner at Blaze Auto, such that she would fall within the FLSA exemption. (Mem. in Supp. of Joint Mot. for Approval of Settlement, p. 3). There is a bona fide dispute about Abouakil's coverage under the FLSA.

### B

In determining whether a settlement is fair and reasonable in the context of an FLSA settlement, courts often consider the factors used to evaluate the fairness of class action settlements. *See Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); *Kraus*, 155 F. Supp. 3d at 523 n.3. When considering the settlement of individual FLSA claims, however, "at least some of the *Girsh* factors appear to be little help, if not irrelevant" and "courts need not fall into the alluring trap of mechanically applying *Girsh* . . . ." *Howard*, 197 F. Supp 3d at 777 n.1 (citation omitted). Here, the relevant factors include: the complexity, expense and likely duration of the litigation, the risks of establishing liability and damages, and the best possible recovery balanced against the attendant risks of litigation. *See Girsh*, 521 F.2d at 157.

Although this case is not especially complex, litigation would be expensive and time-consuming. Absent a settlement, the parties would expend time and money on additional discovery, contested motions and possibly trial. Furthermore, Abouakil risks being unable to establish liability due to Blaze Auto and Silverio's assertion that she

was a partner at Blaze Auto and not entitled to wages under the FLSA. Abouakil potentially faces an all-or-nothing outcome should the case proceed to summary judgment or trial. The settlement also mitigates the risk that she receives nothing should the Court or a jury find that she is a partner who is exempt from FLSA's coverage. Balancing the risks of litigation and the best possible recovery supports approval of the settlement.

C

The Court then must consider whether the settlement "furthers or impermissibly frustrates" the FLSA's implementation in the workplace. *Howard*, 197 F. Supp. 3d at 777. Courts considering proposed FLSA settlements caution against "overly burdensome confidentiality agreements, overbroad release language, or sealed filings." *VanOrden v. Lebanon Farms Disposal, Inc.*, No. 17-1310, 2019 U.S. Dist. LEXIS 181897, at *4 (M.D. Pa. Oct. 18, 2019).

Both the confidentiality and release provisions frustrate the FLSA's purpose to soften the employer's bargaining power and "protect workers from oppressive hours and substandard wages." *Gravely v. PetroChoice, LLC*, No. 19-cv-5409, 2022 U.S. Dist. LEXIS 113746, 2022 WL 2316174, at *3 (E.D. Pa. June 28, 2022) (citing *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 214 (2016)).

i

The confidentiality provision prohibits, to "the extent permissible under applicable law," Abouakil from disclosing the existence and terms of the agreement "in any way to any individual, media entity or the public." (Proposed Settlement Agreement, p. 5). The parties cite *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-

cv-6820, 2014 U.S. Dist. LEXIS 30366, at *3 (E.D. Pa. Mar. 7, 2014), for the proposition that courts have permitted limited confidentiality provisions in FLSA settlement agreements. (Mem. in Supp. of Joint Mot. for Approval of Settlement, p. 6). But in *Chickie's & Pete's*, the court evaluated a confidentiality provision that "allow[ed] for widespread dissemination of the Proposed Agreement" and only prohibited the plaintiffs from "disparaging [d]efendants or discussing the substance and negotiations of [the] matter with the press and media"; the plaintiffs were still "permitted to discuss the matter with fellow employees and others without forfeiting their awards." *Chickie's & Pete's*, 2014 U.S. Dist. LEXIS 30366, at *10–11.

By contrast, Abouakil would be prevented under the proposed confidentiality agreement from discussing the settlement with fellow employees and the public. The agreement effectively muzzles Abouakil from speaking to anyone and "thwart[s] the informational objective of the [FLSA's] notice requirement by silencing the employee who has vindicated a disputed FLSA right." *Brumley v. Camin Cargo Control, Inc.*, 2012 U.S. Dist. LEXIS 40599, 2012 WL 1019337, at *7 (D.N.J. Mar. 26, 2012) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)).

ii

Furthermore, the settlement would "forever release[]" Blaze Auto and Silverio from "any and all claims" under state or federal law that are "in any way connected" to Aboukil's work for Blaze Auto. (Proposed Settlement Agreement, p. 4). This release includes, *inter alia*, known, unknown and any possible future claims. (*Id.*)

Courts in the Third Circuit reviewing FLSA settlements "require litigants to limit the scope of waiver and release provisions to the specific litigation." *Baez-Medina*

*v. Judge Grp., Inc.*, 2023 U.S. Dist. LEXIS 124960, at *27 (E.D. Pa. July 20, 2023) (citing *Alvarez v. BI Inc.*, 2020 U.S. Dist. LEXIS 60656, at *4 (E.D. Pa. Apr. 6, 2020)). Indeed, the parties acknowledge that district courts are "generally skeptical of overly broad release provisions." (Mem. in Supp. of Joint Mot. for Approval of Settlement, p. 6). Nevertheless, they contend that this $80,000 settlement should be approved because the additional funds—beyond Abouakil's alleged lost wages and liquidated damages—are "consideration for the release of [Abouakil's] other wage-related claims, her threatened employment-related claims made against Defendants after commencement of this current action and all other related claims." (*Id.* at pp. 6–7).[2]

The parties propose bundling together and then settling all past and future claims, including non-FLSA claims, in one fell swoop. They obscure which potential claims Abouakil would be releasing in exchange for the additional settlement funds and—because the calculations of Abouakil's alleged lost wages are unclear, *see supra* Part I—how much of the settlement is consideration for the general release. Such a broad release prevents the Court from evaluating the non-FLSA claims that it waived, "potentially provides Defendant[s] with a windfall should some unknown claim later accrue" and "runs contrary to the history and policy of the FLSA." *Wahpoe v. Staffmore, LLC*, 2020 U.S. Dist. LEXIS 169314, at *18 (E.D. Pa. Sep. 16, 2020).

---

[2] The parties also cite *Young v. Tri. Cnty. Sec. Agency, Inc.*, No. Civ. A. 13-5791, 2014 U.S. Dist. LEXIS 62931 (E.D. Pa. May 7, 2014) as an example of a court in this district approving a FLSA settlement agreement with a broad release provision. Insofar as *Young v. Tri Cnty Sec. Agency, Inc.* is persuasive authority supporting a broad release, it is still not directly on point. *Young* involved a FLSA class-action settlement, where one class member, who was the class representative and made "significant contributions" to the litigation, received an incentive award of $2,000 and provided a general release of his claims. 2014 U.S. Dist. LEXIS 62931, *20–21.

7

An appropriate Order follows.[3]

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.

---

[3] Any future motions for settlement approval must also provide a stronger justification for attorneys' fees. In similar FLSA cases courts award a fixed portion of the settlement amount to counsel as attorneys' fees. *See McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *4 (E.D. Pa. June 4, 2014). Among the factors courts consider when determining the propriety of such fees are the size of the settlement amount, awards in similar cases and whether plaintiffs object. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). Here, the settlement agreement would award counsel $32,816.99—41% of the $80,000 settlement fund—which is approaching the upper-bounds of accepted fee awards. *See Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (accepted range is roughly 20 to 45%). Even setting aside the dubiousness of the $80,000 settlement fund as the basis for such a large fee award, the parties' submissions are lacking. Although they provide some information about the attorneys' efforts in the case, they provide no lodestar cross-check. *See Solkoff*, 435 F. Supp. 3d at 658 (citing *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 300 (3d Cir. 2005) for the proposition that the Court may use the lodestar method as a cross-check).